UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK CHATWIN and GIOI NGUYEN on behalf of themselves and the Putative Class,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR SALES, USA, INC., TOYOTA MOTOR NORTH AMERICA, INC. and TOYOTA MOTOR CORPORATION,<br><br>Defendants. | Case No.<br><br><br>Civil Action<br><br>CLASS ACTION COMPLAINT AND JURY DEMAND |

Plaintiffs, Mark Chatwin and Gioi Nguyen by their attorneys, Nagel Rice LLP, on behalf of themselves and all others similarly situated, make the following allegations on personal knowledge and information and belief:

I.    NATURE OF THE ACTION

1.    Plaintiffs bring this action for actual damages, equitable relief, including restitution, injunctive relief, and disgorgement of profits, and all other relief available on behalf of themselves and all similarly-situated individuals (the "Class") and entities who own, lease or have owned or have leased a Toyota fourth generation Sienna for model year 2021, 2022, and 2023 (hereinafter, the "Class Vehicles") manufactured and/or sold by the Defendants, Toyota Motor Sales, U.S.A., Inc. ("TMS"), Toyota Motor North America, Inc. ("TMA"), and Toyota Motor Corporation

("TMC") (collectively, "Toyota" or "Defendants")(herein "Class Vehicles").

2.    Although the Toyota Sienna first went into production as a minivan in 1997 it has evolved over the years. Toyota started manufacturing the fourth generation Sienna in May 2020 for sale as the 2021 model. That model year Sienna was offered in LE, XLE, Limited, XSE trim, and Platinum trim lines. All models have a hybrid powertrain and all-wheel drive (AWD) capability. For the 2022 and 2023 model years all the Sienna vehicles sold in the United State are all hybrids and AWD. There were 107,990 Siennas sold in 2021 in the United States and 69,751 Siennas sold in 2022 in the United States. The figures for 2023 are not yet available.

3.    Because of the hybrid powertrain, and AWD configuration, the fourth generation Siennas suffer from the same uniform manufacturing and design defect (herein the "Defect") present in several other Toyota and Lexus models that are already the subject of a Class Action pending in New Jersey captioned as *Isenberg et al v Toyota Motors Sales, USA, Inc. et al*, Civil Action No. 2:22-cv-05673-JXN-MAH) and a separate Class Action pending in Montreal, Canada captioned *Constantin Sultana v Toyota Canada, Inc.*.

4.    All the Class Vehicles are equipped with a hybrid system power cable which runs from the front of the vehicle to the rear motor generator (RMG). However, the orange cable connector which connects the cable to the RMG has little protection from the

2

elements including, but not limited to, snow, rock salt, and other debris coming off the road. As a result, this cable and connector is susceptible to corrosion.

5. Additionally, as admitted by the Toyota's National Manager for Product Quality and Service Support in Canada, the connector is vulnerable to splitting when it accumulates road debris due to the effects of repeated freeze-thaw cycles in cold weather. https://www.apa.ca/newsitem.asp?id=1418

6. When corrosion and/or dirt builds up at the MGR connector, the Class Vehicles experience a short in the MGR connector, may experience noise or distortion when listening to the radio, and ultimately the hybrid system will become inoperable requiring replacement of the entire cable.

7. This problem does not manifest immediately upon purchase. It is a progressive problem, which may take a few years before the cable corrosion results in a failure and the operation of the Class Vehicle ceases until the parts are replaced. This may occur suddenly while the vehicle is operating in traffic with catastrophic results.

8. Toyota initially took the position that the cable is covered only by the 3 year/36,000 mile basic warranty; rather than the Toyota Hybrid Related Component Coverage ("Hybrid Component Warranty")which covers defects in materials or workmanship for 8 years/ 100,000 miles or the HV battery warranty which is covered

3

for 10 years from date of first use or 150,000 miles whichever comes first, or even the powertrain warranty which runs for 60 months/60,000 miles.

9.   Interestingly, when the fourth-generation Sienna first came out, Toyota's press release issued on October 27, 2020 misrepresented that "the powertrain warranty covers all hybrid-related components" but that was not accurate. See https://pressroom.toyota.com/2021-toyota-sienna-hits-dealerships-this-november/.

10.   The cost to replace the cable results in repair bills in the range of $4,200 to $8,000 which are routinely charged to the customer because the basic warranty has expired by the time these expensive repairs must be performed to operate the vehicle.

11.   There is no requirement in the owner's manual or service and warranty information booklet that the wiring harness and MGR connector should be inspected or maintained in any way when the vehicles are brought in for service. Further, even after this problem became a known issue, dealers are reluctant to voluntarily take the time to examine and clean or replace these parts.

12. Clearly these are not parts that Class Vehicle purchasers anticipate breaking during the expected useful life of the Class Vehicles. However, as will be detailed below, these parts routinely fail resulting in expensive repairs which should be covered for the life of the Class Vehicle.

**4**

13. This Defect is inherent in the design and/or manufacture of the Class Vehicles' wiring harness that supplies electrical power to the rear motor. As a result of the Defect, Plaintiffs and the other members of the Class have been subject, and continue to be subject, to costly repairs and a potential safety risk if the vehicle shuts down without warning while on a busy road.

14. Defendants knew or should have known before the time it sold the first Fourth Generation Sienna in 2021, that the Class Vehicles contained the Defect, particularly since this Defect has been manifesting in Toyota's other hybrid AWD vehicles, most notably the Toyota RAV4 Hybrid from as early as 2019. Moreover, Defendants have acknowledged this problem in open Court in the case pending in Montreal with respect to numerous models, including the Toyota Sienna, and has even recently extended the warranty to 8 years or 100,000 miles in the United States with respect to the RAV4 Hybrid and RAV4 Prime a few months after the New Jersey Class Action was filed.

15. At all times, Defendants concealed from and/or failed to disclose to Plaintiffs, the other members of the Class and all others in the chain of distribution, the Defect, and failed to remove the Class Vehicles from the marketplace or take appropriate remedial action. Instead, Defendants sold and serviced the Class Vehicles, and continue to sell and service the Class Vehicles, even though it knows and knew, or was reckless in not knowing,

that the Class Vehicles contained the Defect, and that such failure would ultimately result in the inability of Plaintiffs and the other members of the Class to use their vehicles for their intended purpose during the time Plaintiffs and the other members of the Class reasonably expected they would have use of their vehicles. The Defect subjects Plaintiffs and the other members of the Class to an increased risk of accident, injury, or death as well as expensive repairs.

16. Defendants omitted material information regarding the Defect from its marketing, advertising, sale, and lease of the Class Vehicles.

17. The Defect has caused the Class Vehicles to fail prematurely, whether within or outside of the applicable warranty periods.

18. Many owners and lessees of the Class Vehicles have complained in public forums and to Toyota dealerships about the Defect and the specific problems it causes and have requested that Defendants address and remedy the Defect.

19. The extensive number of customer complaints, field investigations, communications with dealers and service technicians, discussions in on-line forums, and an attempted redesign, establish that Toyota knew of the Defect prior to the autumn of 2020, which is when Toyota created Tech Tip T-TT0630-20 entitled "Corrosion on MGR Cable" for the 2019 and 2020 Toyota

RAV4 Hybrids and sent this Tech Tip to dealers in the United States, but did not disclose this information to the general public or class members. The Fourth Generation of the Toyota Sienna was designed with the same configuration as the RAV4 Hybrids, yet Toyota concealed this information from the public and placed and continued to place the Class Vehicles in the stream of commerce knowing that class members would be adversely affected.

20.   Defendants have only recently acknowledged in the Class Action pending in Montreal that numerous model Hybrids, including the Sienna,  have the same configuration of the cable and MGR connection and are subject to this problem, and have indicated that they will extend the warranty on these other models in Canada.

21.   However, as a direct and proximate consequence of Toyota's active and ongoing concealment and omission of the Defect, Plaintiffs and the other members of the Class purchased, leased, and currently own or lease defective vehicles and have incurred damages thereby.

22.   Had Plaintiffs and other members of the Class known of the Defect at the time of purchase or lease, they would not have bought or leased their vehicles, or would have paid substantially less for them. Each Plaintiff and Class member has suffered an ascertainable loss resulting from Toyota's omissions and/or misrepresentations association with the Class Vehicles.

23.   Plaintiffs were provided with information about the characteristics, safety and high quality of the Class Vehicles both at the dealerships where they purchased the Class Vehicles and through Toyota's extensive advertising campaigns regarding quality and safety as intended by Toyota. However, no Plaintiff received information about the hybrid cable corrosion connector Defect prior to purchasing the vehicle.

24.   Plaintiffs seek actual damages, injunctive relief, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to Plaintiffs and the Class.

## II.  PARTIES

25.   Plaintiff Mark Chatwin is a New York citizen who resides in Bridgeport, New York.

26.   Plaintiff Gioi (Joey) Nguyen is a Texas citizen who resides in Grand Prairie, Texas.

27.   Defendant Toyota Motor Sales, USA, Inc. ("TMS") is a California corporation with its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024.

28.   Defendant Toyota Motor North America, LLC ("TMNA"), is a California corporation with its principal place of business at 6565 Headquarters Drive, Plano Texas 75024. TMNA is Toyota's sales and marketing arm in the United States and manages sales and other

operation in 49 states.   TMNA distributes both Toyota and Lexus vehicles and sells them through its dealer network.

29.   Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation with offices at 1 Toyota-Cho, Toyota City, Aichi Prefecture, Japan. TMC is the parent corporation of TMS.

30.   At all relevant times, Defendants were engaged in the business of marketing, advertising, distributing, selling, and warranting automobiles, other motor vehicles and motor vehicle components in New Jersey and throughout the United States of America. Defendants drafted and published the owner's manual and service and warranty information materials and acted as the warrantor of vehicles constructed by the Defendants which are sold in the USA.

31.   There exists a unity of ownership between TMNA, TMS and TMC and their agents, such that any individuality or separateness between them has ceased and each is the alter ego of the other. The three entities communicate with each other concerning virtually all aspects of the products distributed within the USA.

## Plaintiffs' Experiences

32.   On April 22, 2023, Mark Chatwin("Chatwin") purchased a brand new 2023 Toyota Sienna XSE/AWD from Williams Toyota of Elmira, New York for $50,204.00 prior to a reduction for his trade in and a small rebate and the addition of costs for taxes and registration.

33.   Chatwin purchased the Sienna because he valued Toyota's reputation for reliability and the hybrid feature would provide him with good gas mileage. Chatwin resides in a town in upstate New York which has cold and snowy winters so he was interested in the all-wheel drive featured on these models.

34.   Chatwin still owns the Class Vehicle which is still under warranty from the dealership where he purchased the car.

35.   Unbeknownst to Chatwin at the time of purchase, the Class Vehicle was built with the Defect rendering the vehicle subject to a short in the MGR connector due to the high voltage wire harness being subject to corrosion. Because Chatwin lives in an area with very snowy winters he is at a very high risk for experiencing the Defect.

36.   Defendants engaged in unfair, negligent, and deceptive conduct in designing, manufacturing, marketing, selling and servicing Class Vehicles with the Defect which has diminished the value of the Class Vehicle purchased by Chatwin

37.   Prior to his purchase, Chatwin considered the safety, fuel economy and reliability of the Class Vehicles, the features important to him, which was the subject of Toyota's marketing of the Class Vehicle. Chatwin also reviewed the Monroney sticker that Toyota placed on the window prior to his purchase, which advertised the Class Vehicles features, price, specifications, equipment, warranty, crash test ratings and gas mileage. Chatwin relied on

the representations contained on the window sticker when deciding to purchase the Class Vehicle. The Monroney sticker did not disclose that the Class Vehicle possessed the Defect. None of the representations received contained any disclosure related to the Defect.

38.  Chatwin first learned that there was an issue with respect to cable corrosion by happenstance when recently reviewing a website geared to Toyota owners.

39.  Had Toyota disclosed that this vehicle contained the Defect, Chatwin would not have purchased the vehicle, or would have paid significantly less for the vehicle.

40.  On December 23, 2022, Gioi (Joey) Nguyen ("Nguyen") purchased a new 2023 Toyota Sienna SXE 25th Anniversary Edition AWD from Family Toyota of Burleson, in Burleson Texas paying $50,600 plus tax for the vehicle.

41.  At the present time the vehicle had 11,673 miles and is still under the Toyota warranties. Nguyen still owns the Class Vehicle which he purchased for personal use.

42.  Unknown to Nguyen at the time of purchase, the Class Vehicle was equipped with the Defect rendering the vehicle subject to a short in the MGR connector due to the high voltage wire harness being subject to corrosion. Defendants engaged in unfair, negligent and deceptive conduct in designing, manufacturing, marketing, selling and servicing Class Vehicles with the Defect

which has caused Nguyen out-of-pocket loss and diminished the value of the Class Vehicle.

43.   Prior to his purchase, Nguyen considered the safety, fuel economy and reliability of the Class Vehicles, the features important to him, which are the subject of Toyota's marketing of the Class Vehicle. He purchased the vehicle, at least in part, because it was a hybrid and had all-wheel drive.  He also reviewed the Monroney sticker that Toyota placed on the window prior to his purchase, which advertised the Class Vehicles features, price, specifications, equipment, warranty, crash test ratings and gas mileage. Nguyen relied on the representations contained on the window sticker when deciding to purchase the Class Vehicle. The Monroney sticker did not disclose that the Class Vehicle possessed the Defect. None of the representations received contained any disclosure related to the Defect.

44.   Had Toyota disclosed that this vehicle contained the Defect, Nguyen would not have purchased the vehicle, or would have paid significantly less for the vehicle.

45.   Nguyen only learned that his Class Vehicle was subject to the Defect when he started reading about it online.

46.   At all times, Plaintiffs and the other members of the Class drove their vehicles in a foreseeable manner, and in the manner in which they were intended to be used.

47.    The proposed Class Representatives and proposed class members complied with all warranty and contractual obligations including all warranty, warranty notice, maintenance and product use obligations for their respective class vehicles. The proposed class representatives and proposed class members operated their class vehicles under normal anticipated conditions in noncommercial environments.

48.    Despite actual and constructive knowledge of class vehicle defects as described in this complaint, the Defendants failed to cure the Class Vehicle Defect within the express warranty period and thereby breached the terms of the express warranty.

49.    Additionally, the Defendants have refused to fully reimburse or compensate class members for vehicle repair expenses or provide a suitable substitute or replacement vehicle during repairs for those who have already experienced the Defect.

50.    Through no fault of their own, the proposed class representatives and proposed class members did not possess sufficient technical expertise to recognize symptoms of impending hybrid electric cable corrosion and failure.  This information, however, was well known to Toyota, but not revealed.

51.    Plaintiffs and the Class have suffered an ascertainable loss as a result of the Defendants' omissions associated with the Defect, including but not limited to, out-of-pocket losses and diminished value of the Class Vehicles.

52.  If Plaintiffs and the other members of the Class were made aware of the concealments, failures to disclose and omissions described herein, they would not have purchased their vehicles or would have paid significantly less for them.

53.  Plaintiffs and the other members of the Class have been injured because they purchased Class Vehicles which are of a diminished value by virtue of the Defect.

### III. JURISDICTION AND VENUE

54.  This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2), as the Class contains more than 100 members, at least one of whom maintains citizenship in a state diverse from Defendants and seeks in the aggregate more than Five Million Dollars ($5,000,000.00), exclusive of costs and interest. This Court also has original federal question jurisdiction because Plaintiffs assert claims arising under the Magnuson-Moss Warranty Act, 15 U.S.C. Section 2301 et seq.

55.  This Court has personal jurisdiction over the parties because Defendants conduct substantial business in New Jersey. Defendants have purposefully availed itself of the benefits and protections of the District of New Jersey by continuously and systematically conducting substantial business in this judicial district and has agents and representatives that can be found in this State. Moreover, a similar case involving the same Defect

14

found in different models manufactured by Toyota is already pending in this District.

56.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a similar case involving the same Defect but different models manufactured by the same Defendants is already pending in this District, and Defendants' conduct has injured members of the Class residing in this District. Further, Defendants advertise in this District and it profits from its activities conducted within this District. Accordingly, this Court has jurisdiction over this action, and venue is proper in this judicial District.

### IV. <u>TOLLING OF STATUTE OF LIMITATIONS</u>

57.    Any applicable statute(s) of limitations have been tolled by Toyota's knowing and active concealment and denial of the facts alleged herein. Despite their due diligence, Plaintiffs and the other members of the Class could not have reasonably discovered the Defect until shortly before this class action litigation was commenced.

58.    Toyota was and remains under a continuing duty to disclose to Plaintiffs and the other members of the Class the true character, quality and nature of the Defect, that the Defect will require costly repairs, that the Defect poses a safety concern, and that the Defect diminishes the resale value of the Class Vehicles. As a result of the active concealment by Toyota, any and

all statutes of limitations otherwise applicable to the allegations herein have been tolled.

59. Moreover, because the Defect could not be detected due to Toyota's purposefully fraudulent concealment, Plaintiffs and the other members of the Class were not reasonably able to discover the Defect until after purchasing or leasing the Class Vehicles, despite their exercise of due diligence. Thus, the discovery rule is applicable to the claims asserted by Plaintiffs and the other members of the Class.

60. Any applicable statute of limitation has therefore been tolled by Toyota's knowing, active concealment and denial of the facts alleged herein. Toyota is estopped from relying on any statutes of limitation because of its concealment of the Defect.

### V. FACTUAL BACKGROUND

A. The Relationship Between the Sienna Models and the Models in the Isenberg Class Action

61. The Class Vehicles experiencing the Defect are all Toyota Fourth Generation Siennas for model years 2021, 2022 and 2023 which are Hybrids and AWD. The Class Vehicles are based upon the identical design or substantially similar design of the RAV4-hybrids which have the same orange cable connector, and the same configuration and placement of the high voltage wire harness rendering the MGR subject to shorting out.

16

62.   In the fall of 2020, Toyota issued Tech-Tip T-TT-0630-20 in the United States. The bulletin says the vehicles may trigger diagnostic trouble codes P0AA649 or P1C8049:

> "P0AA649-Hybrid/EV Battery Voltage System Isolation Internal Electronic Failure" "P1C8049-Hybrid/EV Battery Voltage System Isolation (Rear Motor Area) Internal Electronic Failure" "Vehicles exhibiting this condition have been experiencing a short in MGR connector due to corrosion." Toyota indicated in this Tech Tip that "This issue is currently being investigated." (See Exhibit A)

63.   Two years later, on March 24, 2022, Toyota Canada issued a more detailed technical bulletin informing dealers that some 2019-2020 RAV4 Hybrids may exhibit an illuminated Malfunction indicator Lamp, the vehicle may also experience noise or distortion when listening to AM radio, and that the conditions can be caused by corrosion in the high voltage wiring harness under the vehicle at the rear motor generator (MGR) caused by dirt and debris inside the connector. Thus, the newer Canadian bulletin seems to acknowledge a pattern of failure and claims to have introduced an improved part during assembly of the 2021 model year.  However, this part still results in collecting of salt and debris leading to corrosion.

64.   After the Canadian RAV4 Hybrid owners petitioned Toyota to issue a recall without success, they filed a class action lawsuit in Canada.  The Toyota RAV4 Hybrid and RAV4 Prime cable

corrosion lawsuit was filed on May 19, 2022 in the Superior Court for the Province of Quebec District of Montreal and is entitled *Constantin Sultana v. Toyota Canada Inc.*

65.   On September 22, 2022, *Isenberg et al v Toyota Motors Sales, USA, Inc. et al*, Civil Action No. 2:22-cv-05673-JXN-MAH was filed in the federal district court for the District of New Jersey and remains pending.

66.   In December of 2022, just a few months after the commencement of the *Isenberg* lawsuit, Toyota North America began notifying dealers that owners of RAV4 hybrids from 2019-2022 model years will have warranty coverage for the high voltage cable connector to the rear motor extended to eight years or 160,000 kilometers.

67.   The United States owners of RAV4 AWD hybrids began receiving letters in February 2023 of Customer Support Program 22TE09 extending the warranty to 8 years or 100,000 miles. (See exemplar of letter annexed as Exhibit B)

68.   However, the promise of the extension of the warranty is only a partial solution as it merely replaces the defective cable and connector with the same defective cable and connector once the original one breaks. Further, many Toyota owners expect to keep their vehicles for more than 100,000 miles. Finally, this voluntary warranty extension is unlike a recall which requires the defective part to be replaced with a non-defective part and which

is overseen by the NHTSA. Finally, Plaintiffs' counsel has already received a few reports from RAV4 owners claiming that Toyota Dealers are refusing to perform the repairs pursuant to the Customer Support Program issued by Toyota.

69.    As reported by the Automobile Protection Association, a membership based non-profit association founded in 1969 with offices in Toronto, Ontario, Canada; Toyota has represented to the Court in Montreal that Toyota was extending the warranty on the power cable to the rear motor-generator of additional hybrid models, including the 2020-2023 Highlander Hybrid, 2019-2022 RAV4 Hybrid and 2021-2022 Prime, 2021-2022 Venza Hybrid, 2022 Lexus NX 350h Hybrid, 2022 Lexus NX 450h Plug-In Hybrid, as well as, the 2021-2022 Toyota Sienna. (See article discussing proceedings in Court on the Canadian Class Action annexed as Exhibit C)

70.    The *Isenberg Action* did not include any Class Representatives owning a Toyota Sienna, which necessitates filing the instant companion action.

71.    However, at the present time, it does not appear that the warranty has been extended with respect to any of the vehicles except the RAV4 Hybrid in the United States.

B. Description of the Defect in the Toyota AWD Hybrids

72.    This photo below of the RAV4 AWD Hybrid demonstrates the configuration of the Hybrid Engine and the Wiring Harness which is low to the ground and subject to dirt and debris.



73.  The three photos below demonstrate the destruction and corrosion which occurs after the hybrid cables and connectors are exposed to the elements over time.







74.  The photo below demonstrates what is purportedly a new, and improved cable connector because it has a small slot where water and debris can allegedly come out on its own.  However, this new drainage slot does not solve the problem of road salt and

debris continuously getting into the opening and causing corrosion.



C.  **The Reasonable And Legitimate Expectations Of Plaintiffs And The Members Of The Putative Class**

75.  Customers purchasing or leasing vehicles reasonably and legitimately expect that those vehicles, like the Class Vehicles at issue herein, will properly function for many years.

76.  In purchasing or leasing their vehicles, Plaintiffs and the other members of the Class reasonably and legitimately expected their vehicles to be reliable, and to operate in accordance with all of their intended purposes – including not having to replace the hybrid high voltage cable and connection that runs the length of the vehicle and is necessary to operate their Hybrid or Prime vehicle.

77.  In purchasing or leasing their vehicles, Plaintiffs and the other members of the Class reasonably and legitimately expected that the Class Vehicles would be free from the Defect.

78.  The existence of the Defect is a fact that would be considered material to a reasonable consumer deciding whether to purchase or lease an expensive Toyota vehicle. Particularly since Toyota touts its vehicles as lasting as long as 250,000 miles of use with proper maintenance.

79.  Customers like Plaintiffs and the other members of the Class, reasonably and legitimately expect and assume that a vehicle will function in their intended manner, will not pose a safety hazard, and are free from defects. Plaintiffs and the other

members of the Class also reasonably and legitimately expect and assume that Defendants will not sell or lease vehicles with a known defect, will disclose any such defects to consumers when they learn of them, and take all steps to remedy any defect in a manner that does not cause additional cost to the customer. It was reasonable and legitimate for Plaintiffs and the other members of the Class to expect Toyota not to intentionally conceal problems from them – such as the Defects described herein, to continually deny its existence, and refuse to bear the repair costs that become necessary to correct the problems resulting from the Defect.

80.    Throughout the period that the Class Vehicles were sold and leased, Toyota marketed, promoted, and advertised the Vehicles as reliable, safe, and fuel efficient.

81.    Plaintiffs and the other members of the Class reasonably and legitimately expected Toyota to disclose the existence of the Defects and that the Vehicles were prone to corrosion of the high voltage cable that connects to the MGR that were known to Toyota at the time of sale or lease, or when the vehicle was brought in for regular maintenance or repairs.

82.    Plaintiffs and the other members of the Class could not have discovered the latent Defect through any reasonable inspection of their vehicles prior to purchase.

83.   As a direct and proximate result of the Defect, Plaintiffs and the other members of the Class have or will experience shorts in the MGR connector causing the vehicles to stop driving, necessitating expensive repairs or a tow to the dealer. Plaintiffs and the Class did not receive what they paid for, and have incurred actual damages, including diminution in value.

84.   Had Plaintiffs and other members of the Class known about the Defect while they were in the market for purchasing or leasing a vehicle, they would not have purchased or leased the Class Vehicles or, at the very least, would have paid less for them particularly due to the increased risk of accident, injury or death.

D.   Defendants' Awareness Of The Defect

85.   Plaintiffs allege that at all relevant times, specifically at the time they purchased or leased their vehicles and when their vehicles were brought in for service, Defendants knew of the Defect and the safety dangers of the Defect. Toyota was under a duty to disclose the Defect based upon its exclusive knowledge of and/or concealed material information regarding the Defect; Toyota failed to disclose the Defect to Plaintiffs, other Class members, or the public at any time or place or in any manner such that it could (and would) have affected Plaintiffs' and other

class members' pre-sale decision to purchase and/or lease the Class Vehicles.

86. The Defendants failed to inform Class Vehicle owners and lessees prior to purchase that the Hybrid High Voltage Electric MGR Cable Connector was subject to premature and fatal corrosion and would fail shortly after expiration of the express warranty. Toyota misrepresented by affirmative conduct and/or omission and/or fraudulent concealment that the Defect existed.

87. The Defendants also failed to inform Class Vehicle owners and lessees at the time of purchase that the Hybrid Cable and connector in their Class Vehicle's had been inadequately tested prior to placing the car in production and the time of Class Vehicle sale.

88. Toyota obtained knowledge that there was something wrong with the wiring harness cable prior to the Autumn 2020 as evidenced by that fact that they began to investigate the problem, made recommendations for dealer's to visually inspect the high voltage wire harness that connects to the MGR and directed that the mechanics 'call TAS[1] for further inspections' without revealing the problem to class members.

89. Although this Tech Tip was not issued until 2020, Toyota knew there was a problem prior to that time, given the extensive

---

[1] TAS stands for Technical Assistance.

complaints on numerous websites monitored by Toyota, including Toyota's own online forum, which included numerous complaints charging that corrosion problem with the high voltage wiring harness and the buildup of dirt and sediment in the connector posing an unreasonable safety hazard. Additionally, there are complaints posted on the database maintained by the National Highway Traffic Safety Administration which Toyota was clearly aware of. It is plain that Defendant knew of the Defect at the time when Plaintiffs and the class members purchased or leased their Class Vehicles.

90. Defendant also knew, or reasonably should have known, of the Defect based upon the number of complaints it received from its dealerships and service shops. For instance, multiple departments at Toyota interact with its dealerships and service shops in order to identify potentially widespread vehicle problems. These departments collect and analyze data from the dealerships and service shops in order to identify any problems in its vehicles.

91. Toyota requires its dealerships to sign a Dealer Agreement which requires the dealerships to provide Toyota with access to all the service and warranty service records for repairs made by the individual dealerships. The Agreement establishes that Toyota requires its dealerships to have a computer system that serves as Toyota's primary link to the dealership, including for

parts, ordering, warranty claims, filing of reports, etc. Indeed, even the Technical Tip itself directs the dealers to report their findings to TAS.

92.    Further, Toyota's customer relations division regularly receives and responds to customer calls, emails, and other correspondence concerning, *inter alia*, product defects. Through these sources, Toyota was made aware, or reasonably should have been made aware, of the Defect.

93.    Numerous customer complaints from numerous sources demonstrate that Toyota knew, or reasonably should have known, of the problems concerning the Defect, the costs associated with the necessary repairs, and how the defective condition affects its consumers.

94.    Further, Toyota has a legal obligation pursuant to federal law to monitor defects that can cause a safety issue and report them within five (5) days of learning of them. Consequently, Toyota closely monitors the NHTSA-ODI website and the complaints filed therein to comply with their reporting obligations under federal law.

95.    There have been several complaints on the NHTSA website which may be related to this problem with respect to the RAV4 Hybrids which have the same construction as the 2021-2023 Siennas, but to date, there have been no reports related to the Siennas. As to the RAV4 Hybrids, for example:

**May 5, 2022** NHTSA ID NUMBER: 11463470

## Components: UNKNOWN OR OTHER

**NHTSA ID Number:** 11463470

**Incident Date** May 4, 2022

**Consumer Location** BYRAM TOWNSHIP, NJ

**Vehicle Identification Number** JTMFB3FV5MD****

**Summary of Complaint**

CRASH**No**

FIRE**No**

INJURIES**0**

DEATHS**0**

Vehicle abruptly and harshly slowed from 65mph to around 30 on the highway and multiple error lights and messages came up. After initial deceleration the vehicle seemed to drive normally. Once in a safe place to stop the vehicle was shut off and the only errors remained had been check engine and hybrid system malfunction and again the vehicle seemed to drive normally and was brought to the dealership for inspection the next day on its own power. Errors seen in dash and Head Unit: brake power low, brake support system malfunction, check engine, hybrid system malfunction, park sensor malfunction, lane trace assist malfunction, sonar malfunction, headlight system malfunction. Dealership states they need to contact Toyota as there is something wrong and they are unsure what it is at this time.

## July 20 2022 NHTSA ID Number: 11474983

## Components: ELECTRICAL SYSTEM

NHTSA ID Number 11474983

Incident Date July 05 2022

Consumer Location EAST SYRACUSE, NY

Vehicle Identification Number JTMDWRFV4KD******

## Complaint Summary

CRASH No

FIRE    No

INJURIES 0

DEATHS 0

I RECEIVED A NOTIFICATION OF A MALFUNCTION IN THE INTELLIGENT CLEARANCE SONAR SYSTEM AND A MALFUNCTION IN THE HYBRID SYSTEM. I MADE AN APPOINTMENT WITH THE DEALER BUT ON THE MORNING OF THE APPOINTMENT THE CAR WAS NON-OPERATIONAL IN THE DRIVEWAY AND HAD TO BE TOWED. THE DIAGNOSIS WAS CORROSION OF THE WIRING HARNESS. THIS PROBLEM HAS BEEN WIDELY REPORTED ON RAV4 HYBRID FORUMS AND APPEARS TO BE AN ISSUE IN REGIONS OF THE COUNTRY WITH SNOW/SALT ROAD TREATMENTS. I WOULD APPRECIATE AN INVESTIGATION.

Affected Products (1)

Vehicle

| MAKE | MODEL | YEAR |
|------|-------|------|
| TOYOTA | RAV4 | 2019 |

   96. However, owner complaints about this problem impacting

the 2021 Toyota Siennas have started to appear on the Sienna chat

board, which Toyota has access to. See for example:

# Hybrid System Failure on 2021?

17031 Views43 Replies19 ParticipantsLast post by Gary S., May 16, 2022



**DadDoingStuff**
Discussion Starter·Mar 14, 2019
Curious if anyone else has had this happen yet? We had 2000 miles on the new Sienna when it started saying "Hybrid System Failure, Contact Dealer". We took it in and they said the main hybrid wiring harness has a faulty connector. The problem is, they don't have a part to fix it. It's been sitting in the maintenance bay at the dealer for over a month now with no ETA. They put us in a 2020 rental, but we are getting pretty irritated that we paid for a new van but we don't have that new van. I actually think that after 30 days it qualifies under our state lemon law. Wondering if it's a one-off issue or if this is going to be a systemic problem and Toyota ends up doing a recall for this wiring harness.

**Dianna**
·#7·Apr 3, 2021
Our 2021 Sienna went into the shop March 26 2021 because of the Hybrid System Malfunction Visit Your Dealer Warning. We got it back 3 weeks later they just replaced 2 fuses. They gave us a RAV4 as a rental. And as I'm typing this today April 3rd the Hybrid System Malfunction warning just came up again! And the RAV4 rental is not going to be enough room for us this time.. I have 2 kids in booster seats and a 14 year old. 😩🙄



**SiennaMom3**

·#14·May 19, 2021

This JUST happened to me minutes ago. Quick google search and I found y'all. The dealer said they would "fit me in" at four and are saying they may not be able to address it if the error message isn't listed when I get there. I had to turn it on and off three times to get it to drive. Any advice?

**LE2021**
·#20·May 21, 2021
DadDoingStuff said:

kid you not! We drove our home and the "Sign" pop up, i was only thinking about Lemon. Since the purchased dealer was 100 miles away (also same dealer rep said, if you don't have power/brake issues , keep driving) i went to nearby dealer and same fixed "loose hybrid batter wire harness". Took 3 hours, sine then drove 1000 miles and so far clean.



7834 Views 4 Replies 4 Participants Last post by wolvesh8, Oct 21, 2021



**wolvesh8**
Discussion Starter · Oct 20, 2021 (Edited)
28200KM 2021 sienna LE in Vancouver Canada which is not cold area.
when turn on engine it shows hybrid system malfunction visit your dealer,
after driving few hours or turn on/off engine few times it goes off.
this happens every 2 or 3days.

**PetTaxi**
· #2 · Oct 20, 2021
There is a hybrid system malfunction...visit your dealer...

https://www.siennachat.com/threads/hybrid-system-malfunction-visit-your-dealer-problem-solved.68826/

97. Toyota had exclusive knowledge of and/or concealed material information about the Defect and failed to disclose the Defect to Plaintiffs and other class members in any pre-sale materials and during any service visits—the time at which Plaintiffs and other class members could have acted. Toyota had exclusive knowledge of and/or actively concealed the truth about the existence and nature of the Defect from Plaintiffs and other class members at all times, even though Toyota knew about the Defect and knew that information about the Defect would be important to a reasonable consumer.

98. Had Toyota disclosed the truth, Plaintiffs (and reasonable consumers) 1) would have paid less for the Class Vehicles, 2) would not have purchased or leased the Class Vehicles

33

at all, or 3) would have brought their Class Vehicles in for service during the warranty period.

99.    Toyota, like all automakers, is under a duty to disclose a known defect in a vehicle when there are safety concerns associated with the vehicle's use — *i.e.*, where the failure to disclose implicates a safety issue. Manufacturers may be held liable for their failure to disclose a defect when such an omission pertains to a safety issue. In this case, as stated above, Toyota knew about the Defect, and that the Defect could pose a physical threat to Plaintiffs' own safety or the safety of others. Nevertheless, Toyota failed to disclose the Defect to all owners or lessees of the Class Vehicles and failed to take remedial action.

E. Toyota's Warranty

100. Toyota issued several different warranties to each owner or lessee of the Class Vehicles, some of which are relevant to this Defect.

101. The Basic Coverage Warranty, or bumper-to-bumper warranty is for 3 years or 36,000 miles whichever comes first.

102. The Powertrain Warranty is supposed to cover the parts of the vehicle that make the car move, including the engine, transmission, drive axels and related parts and is for 5 years or 60,000 miles whichever comes first.

103. The Hybrid Battery Warranty for 2020 and newer models went from 8 years or 100,000 miles to 10 years or 150,000 miles, whichever comes first. This warranty is supposed to cover issues with the hybrid battery, electric drivetrain system or other hybrid related components.

104. Toyota instructs owners and lessees to bring their vehicles to a Toyota dealership for warranty repairs.

105. Many owners and lessees have presented the Class Vehicles to Toyota dealerships with complaints related to the Defect. Toyota has evaded its warranty obligations by failing to inform owners and lessees of the Class Vehicles of the existence of the Defect and then refuses to cover the defect under the applicable warranties. Even though owners and lessee have seen a message on their dashboard or entertain screen indicating that they are experiencing a "hybrid system failure" and this code appears when the technician looks for codes, Toyota continues to assert that the cable is not part of the hybrid system and covered by that longer warranty.

106. In many, if not most, instances the Defect does not manifest until after the expiration of the basic coverage warranty and Toyota refuses to provide warranty coverage under the powertrain or hybrid related components warranty although Toyota is well aware that corrosion will not happen that quickly.

107. Owners and lessees of the Class Vehicles have incurred, and will continue to incur, expenses for the diagnosis and repair of the Defect, despite such Defect having been contained in the Vehicles when manufactured, distributed, advertised, marketed, and warranted by Toyota.

## VI. CLASS ACTION ALLEGATIONS

108. Plaintiffs bring this action on behalf of themselves, and all other persons similarly situated, pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclass (collectively, the "Classes"):

### The Nationwide Class

All persons or entities in the United States who own, lease, or have owned or have leased, a Toyota Fourth Generation 2021, 2022, or 2023 Sienna LE, XLE, Limited, XSE or Platinum trim lines.

### The New Jersey Subclass

All persons or entities in New Jersey who own, lease, or have owned or have leased, a Toyota Fourth Generation 2021, 2022, or 2023 Sienna LE, XLE, Limited, XSE or Platinum trim lines.

### The New York Subclass

All persons or entities in New York who own, lease, or have owned or have leased, a Toyota Fourth Generation 2021, 2022, or 2023 Sienna LE, XLE, Limited, XSE or Platinum trim lines.

### The Texas Subclass

All persons or entities in Texas who own, lease, or have owned or have leased, a Toyota Fourth Generation 2021, 2022, or 2023 Sienna LE, XLE, Limited, XSE or Platinum trim lines.

### Excluded from all Classes

Excluded from the Classes are: (a) Defendants, any entity in which Defendants have a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors that purchased the Class Vehicles; (b) the judge to whom this case is assigned and any member of the judge's immediate family; and (c) individuals with claims for personal injury, wrongful death and/or emotional distress.

109. **Numerosity/Impracticability of Joinder**: The members of the Class are so numerous that joinder of all members would be impracticable. The Class is believed to include tens of thousands of members. The Class is composed of an easily ascertainable, self-identifying set of individuals and entities that own, lease or owned and leased the Class Vehicles. The precise number of Class members can be ascertained by reviewing documents in Defendants' possession, custody, and control.

110. **Commonality and Predominance**: There are common questions of law and fact that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the Class Vehicles suffer from the Defect;

b. Whether the likelihood of corrosion in the connection for the high voltage wire harness rendering the MGR subject to a short constitutes a material fact;

c. Whether Toyota knew, or reasonably should have known, that the Class Vehicles were defectively designed, manufactured, marketed, distributed, advertised, warranted, sold, leased, and serviced;

d. Whether Toyota knew or reasonably should have known of the Defect before it sold and leased the Class Vehicles to Plaintiffs and the other members of the Class;

e. Whether Toyota had a duty to disclose the Defect to Plaintiffs and the other members of the Class;

f. Whether Toyota actively and intentionally concealed, failed to disclose and/or omitted material information in its marketing, advertising, sale and lease of the Class Vehicles concerning the existence of the Defect;

g. Whether Toyota actively and intentionally concealed, failed to disclose and/or omitted material information when repairing the Class Vehicles concerning the existence of the Defect;

h. Whether Plaintiffs and the other members of the Class are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction requiring Toyota to institute a recall and/or pay for all repairs resulting from the Defect for the expected useful life of the Class Vehicles;

i. Whether Toyota should be declared financially responsible for notifying all members of the Class of the Defect in the Class Vehicles, and for the costs and expenses of repairing the Defect;

j. Whether Toyota is obligated to inform members of the Class of their right to seek reimbursement for having paid for repairs or engine replacement due to the Defect;

k. Whether Toyota violated the consumer protection laws in the New Jersey Consumer Fraud Act (hereinafter, the "CFA"), N.J.S.A. 56:8-1, et seq., and/or the consumer

protection laws of the states involving Subclass members.

l. Whether Toyota's conduct violates warranty laws, and other laws as asserted herein;

m. Whether, as a result of Toyota's omissions and concealments of material facts related to the Defect, Plaintiffs and the other members of the Class have suffered ascertainable losses, and whether Plaintiffs and the other members of the Class are entitled to monetary damages and/or other remedies, and if so the nature of any such relief;

n. Whether Plaintiffs and the other members of the Class are entitled to recover the diminution in value caused by the Defect;

o. Whether Toyota's acts and/or omissions entitle Plaintiffs and the other members of the Class to treble damages, attorneys' fees, prejudgment interest and cost of suit.

111. **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and the other members of the Class have suffered similar injury by the same wrongful practices by Toyota. The claims of Plaintiffs and the other members of the Class all arise from the same wrongful practices and course of conduct and are based on the same legal and remedial theories.

112. **Adequacy Of Representation**: Plaintiffs will fully and adequately assert and protect the interests of the members of the Class and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests that are contrary to or conflicting with the members of the Class.

113. **Superiority Of Class Action And Impracticability Of Individual Actions**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is not economically feasible and is procedurally impracticable. While the aggregate damages sustained by the members of the Class are in the millions of dollars, and are no less than five million dollars, upon information and belief, the individual damages incurred by each member of the Class resulting from Toyota's wrongful course of conduct are too small to warrant the expense of individual suits. The likelihood of individual members of the Class prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Toyota has acted or refused to act on grounds generally applicable

to the members of the Class and, as such, final injunctive relief, or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

## VII. CLAIMS FOR RELIEF

### FIRST COUNT -- OMISSION

#### Violations of New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-2, et seq.

**(By All Plaintiffs on Behalf of the Nationwide Class, or Alternatively, By Plaintiffs on behalf of the New Jersey Class)**

114. Plaintiffs on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

115. This claim is brought on behalf of the Nationwide Class or alternatively on behalf of the New Jersey Class.

116. Toyota has engaged in deceptive, unconscionable, unfair, fraudulent and/or misleading commercial practices in the advertising, promoting, marketing, distributing, selling and leasing of the Class Vehicles it knew to be defective.

117. Toyota intentionally omitted the fact that its goods, merchandise and/or services did not have characteristics, uses, benefits, or quantities that were advertised and promoted, and failed to disclose that its goods, merchandise and/or services were not of a particular standard, quality or grade.

118. Toyota had a duty to Plaintiffs and the Nationwide Class to disclose the defective nature of the Class Vehicles and the Defect because:

a. Toyota was in a superior position to know the true state of facts about the Defect and repair costs in the Class Vehicles;

b. Plaintiffs and the Nationwide Class could not reasonably have been expected to learn or discover that the Class Vehicles had a dangerous safety defect until after manifestation of the Defect;

c. Toyota knew that Plaintiffs and the Nationwide Class could not reasonably have been expected to learn or discover the Defect and the associated repair costs until the manifestation of the Defect.

119. In failing to disclose the Defect and the associated risks and repair costs, Toyota undertook active and ongoing steps to intentionally conceal the Defects, and has concealed, failed to disclose and/or omitted material facts from Plaintiffs and other members of the Nationwide Class and New Jersey Subclass with respect to the Defect in the Class Vehicles.

120. Toyota intended that Plaintiffs and the other members of the Nationwide Class and New Jersey Subclass would rely upon its acts of concealment and/or omission by purchasing or leasing the

Vehicles at full price rather than paying less to purchase or lease the Class Vehicles, or purchasing or leasing other vehicles.

121. Toyota intended that Plaintiff and the other members of the Nationwide Class and New Jersey Subclass would rely upon its acts of concealment and/or omission to avoid replacing the defective parts during the warranty period.

122. Toyota's omissions were objectively deceptive and had the capacity to deceive reasonable consumers under the circumstances. The fact that Toyota knew about and failed to disclose that the Defect in the Class Vehicles was a material fact that a reasonable and/or unsophisticated consumer would attach importance to at the time of purchase or lease. This fact would influence a reasonable consumer's choice of action during the purchase or lease of a vehicle.

123. Such practices contravene the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

124. As a direct and proximate result of Toyota's violations of the NJCFA, Plaintiffs and the other members of the New Jersey Subclass and Nationwide Class have suffered ascertainable losses, which include but are not limited to, the monies they were forced to expend – and will have to expend in the future – to repair and/or replace their vehicles' high voltage cable and associated parts, the diminished value of their vehicles, and the failure to

receive the benefit of their purchases or leases, and accordingly were harmed by Defendants' actions in violation of the NJCFA.

<u>SECOND COUNT – OVER CHARGING</u>

<u>(Violations of New Jersey's Consumer Fraud Act,
N.J.S.A. § 56:8-2, et seq.)</u>

(By All Plaintiffs on Behalf of the Nationwide Class, or
Alternatively, By Plaintiffs on behalf of the New Jersey Class)

125. Plaintiffs, on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

126. This claim is brought on behalf of the Nationwide Class or alternatively on behalf of the New Jersey Subclass.

127. Toyota has engaged in deceptive, unconscionable, unfair, fraudulent and/or misleading commercial practices in the advertising, promoting, marketing, distributing, selling and leasing of the Class Vehicles at a premium price despite knowing that they were defective.

128. Toyota charged a premium for the Class Vehicles, despite knowing that its goods, merchandise and/or services had characteristics, uses, benefits, or quantities that they did not have, and that its goods, merchandise and/or services were of a particular standard, quality or grade that they were not.

129. In its advertising, promoting, marketing, distributing, selling and leasing of the Class Vehicles, Toyota undertook active

and ongoing steps to charge a premium price for the Class Vehicles while intentionally concealing the Defect, and has consciously concealed, failed to disclose and/or omitted material facts from Plaintiffs and other members of the New Jersey Subclass and Nationwide Class with respect to the Defect.

130. Toyota intended that Plaintiffs and the other members of the New Jersey Subclass and Nationwide Class would rely upon its acts of concealment and/or omission by purchasing or leasing the Class Vehicles at premium price rather than paying less to purchase or lease the Class Vehicles, or purchasing or leasing other vehicles.

131. Toyota's conduct was objectively deceptive and had the capacity to deceive and defraud reasonable consumers under the circumstances. The fact that Toyota knew about and failed to disclose the Defect was a material fact that a reasonable and/or unsophisticated consumer would attach importance to at the time of purchase or lease. This fact would influence a reasonable consumer's choice of action during the purchase or lease of a vehicle.

132. Such practices contravene the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

133. As a direct and proximate result of Toyota's violations of the NJCFA, Plaintiffs and the other members of the Nationwide Class and New Jersey Subclass have suffered ascertainable losses,

which include but are not limited to, the premium price the Nationwide Class and New Jersey Subclass paid for the Class Vehicles, the monies they were forced to expend – and will have to expend in the future – to repair and/or replace the hybrid cable and associated parts, the diminished value of their vehicles, and the failure to receive the benefit of their purchases or leases, and accordingly were harmed by Defendants' actions in violation of the NJCFA.

### THIRD–COMMON LAW FRAUD

(By All Plaintiffs on Behalf of Nationwide Class or, Alternatively, on Behalf of the State Subclasses)

134. Plaintiffs, on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

135. This claim is brought on behalf of the Nationwide Class or alternatively the State Subclasses.

136. Toyota consciously and intentionally concealed, failed to disclose and/or omitted a material presently existing or past fact. For example, Toyota did not fully and truthfully disclose to their customers the presence of the Defect. As a result, Plaintiffs and the other members of the Nationwide Class or State Subclasses were fraudulently induced to purchase or lease Class Vehicles containing the Defect and to pay for numerous repairs to Class Vehicles containing the Defect.

137. These concealments and/or omissions were intentionally made by Toyota with knowledge of their falsity, and with the intent that Plaintiffs and the other members of the Nationwide Class or State Subclasses would rely upon them.

138. Plaintiffs and the other members of the Nationwide Class or State Subclasses reasonably relied on Toyota's concealments and/or omissions, and suffered damages as a result.

<u>FOURTH COUNT-BREACH OF EXPRESS WARRANTY</u>

**(By All Plaintiffs on Behalf of Nationwide Class or, Alternatively, on Behalf of the State Subclasses)**

139. Plaintiffs, on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

140. This claim is brought on behalf of the Nationwide Class of alternatively on behalf of the State Subclasses.

141. Toyota provided all purchasers and lessees of the Class Vehicles with the express warranties described herein, which became part of the basis of the bargain.

142. Accordingly, Toyota warranties are express under state law.

143. The components that must be repaired and/or replaced as a result of the Defect, as well as the other damages caused as a result of the Defect, as described herein, are covered by the

express warranties Toyota provided all purchasers and lessors of the Class Vehicles.

144. Plaintiffs and the other members of the Nationwide Class have complied with all obligations and requirements under the Class Vehicles' express warranties or are otherwise excused from performance of said obligations and requirements.

145. Toyota breached these warranties by selling and leasing Class Vehicles which they knew, or reasonably should have known, contained the Defect and required repair or replacement within and outside the applicable warranty periods, and/or refused to honor the warranties by providing free repairs and/or replacements during the applicable warranty period or periods or after the warranty expired, which is when the Defect typically manifested.

146. Plaintiffs notified Toyota of the breach within a reasonable time, and/or was not required to do so because affording Toyota a reasonable opportunity to cure its breach of written warranty would have been futile. Toyota also knew of the Defect and yet chose to conceal it and to not comply with their warranty obligations.

147. As a direct and proximate result of Toyota's breach of the Class Vehicles' express warranties, Plaintiffs and the other members of the Nationwide Class were damaged by, among other things, being forced to expend monies – and will continue to be

forced to expend monies – to repair and/or replace their vehicles' components, and diminution in value of their vehicles.

148. Toyota's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Toyota's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the Defect and in most instances the Defect does not manifest itself until after the express warranty expires.

149. The time limits contained in Toyota's warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Nationwide Class. Among other things, Plaintiffs and the other members of the Nationwide Class had no meaningful choice in determining these time limitations the terms of which unreasonably favored Toyota. A gross disparity in bargaining power existed between Toyota and Plaintiffs and the Nationwide Class, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives. Further, given the nature of the Defect it should be covered by the Hybrid Component Warranty and/or the Power Train Warranty but Toyota has refused to cover these expensive repairs under these warranties.

150. Plaintiffs and members of the Nationwide Class have complied with all obligations under the warranty, or otherwise

have been excused from performance of said obligations because of Toyota's conduct described herein.

**FIFTH COUNT- BREACH OF IMPLIED WARRANTY**

**(By All Plaintiffs on Behalf of Nationwide Class or, Alternatively, on Behalf of the State Subclasses)**

151. Plaintiffs, on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

152. This claim is brought on behalf of the Nationwide Class or alternatively on behalf of the State Subclasses.

153. Toyota was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Toyota knew, or reasonably should have known, of the specific use for which the Class Vehicles were purchased or leased.

154. Toyota provided Plaintiffs and the other members of the Nationwide Class with an implied warranty of merchantability that the Class Vehicles, and any components thereof, are merchantable and fit for the ordinary purposes for which they were sold or leased.

155. Toyota impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty of merchantability included, among other things: (1) a warranty that the Class Vehicles, and the engines and hybrid parts required for operation were manufactured, supplied, distributed, sold

50

and/or leased by Toyota were safe and reliable for providing transportation, and would not experience loss of power while driving; the inability to use the hybrid battery or experience other faults in the radio or other parts as a result in a short in the MGR due to corrosion, and (ii) a warranty that the Class Vehicles would be fit for their intended use while the vehicles were being operated.

156. Contrary to the applicable implied warranties of merchantability, the Class Vehicles were not fit for their ordinary and intended purpose of providing Plaintiffs and the other members of the Nationwide Class with reliable, durable, and safe transportation.

157. Defendant breached the Class Vehicles' implied warranty of merchantability by selling or leasing Plaintiffs and the other members of the Nationwide Class vehicles, and/or components thereof, that are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles suffered from the Defect at the time of sale or lease rendering the Class Vehicles unfit for their particular purpose of providing safe and reliable transportation.

## SIXTH COUNT – BREACH OF WRITTEN WARRANTY

### (Breach of Written Warranty Under the Magnuson-Moss Warranty Act, 15 U.S.C. § 230 *et seq*.)

(By All Plaintiffs on Behalf of the Nationwide Class)

158.  Plaintiffs, on behalf of themselves and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

159.  This claim is brought on behalf of the Nationwide Class.

160.  Plaintiffs and other members of the Nationwide Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

161.  Toyota is a "supplier[]" and "warrantor[]" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

162.  The Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

163.  Toyota's express warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

164.  Toyota breached the express warranty by selling and leasing vehicles which they knew, or reasonably should have known, contained the Defect and required repair or replacement within the applicable warranty periods, and/or refused to honor the warranties by providing free repairs and/or replacements during the applicable warranty period or periods.

165.  Toyota's breach of the express warranty deprived the Plaintiffs and the other members of the Nationwide Class of the benefits of their bargain.

166.  The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25. In addition, the

amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

167.  Toyota has been afforded a reasonable opportunity to cure its breach of written warranty, including when Plaintiffs and other members of the Nationwide Class brought their Class Vehicles in for diagnoses and repair of the Defect.

168. As a direct and proximate result of Toyota's breach of written warranty, Plaintiffs and other members of the Nationwide Class sustained damages and other losses in an amount to be determined at trial. Toyota's conduct damaged Plaintiffs and other members of the Nationwide Class who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

<u>SEVENTH COUNT-UNJUST ENRICHMENT</u>

(By All Plaintiffs on Behalf of the Nationwide Class)

169. Plaintiffs, on behalf of themselves and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

170. The warranty had value which Plaintiffs paid, and for which Defendants agreed to render services of repair and replace.

171. The Defendants breached its implied and express warranties in that Class Vehicles were defective with respect to

materials, workmanship, and manufacture. The Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of faulty materials being used, workmanship and defects in manufacture and design.

172. The Defendants intentionally, negligently and recklessly and/or fraudulently misrepresented the true characteristics of the Class Vehicles purchased or leased to proposed class representative and class members.

173. The Defendants benefited financially from its breaches of warranty, misrepresentations and fraud as described in this Complaint. The Defendants denied legitimate class vehicle warranty claims and obtained further unwarranted financial gain.

174. Plaintiffs and the Class sustained monetary damages as described above.

175. It would be unjust and inequitable to allow Defendants to retain its monetary enrichment from its wrongful and unlawful acts.

176. The Plaintiffs and Class request that the Defendants disgorge profits from its wrongful and unlawful conduct and the Court establish a constructive trust funded by the benefits conferred upon the Defendants as result of its wrongful conduct. The Plaintiffs and Class should be designated beneficiaries of the

trust and obtain restitution for out-of-pocket expenses caused by the Defendants' conduct.

## EIGHTH COUNT-DECEPTIVE ACTS AND PRACTICES

### (Violations of New York General Business Law §349)

### (By Chatwin individually and on Behalf of the New York Subclass)

177. Plaintiffs Chatwin on behalf of himself and all others similarly situated, alleges and incorporates the above allegations by reference as if fully set forth herein.

178. With regards to Plaintiff Chatwin and other members of the New York Subclass, Defendants' conduct as alleged herein constitutes deceptive acts and practices in the conduct of a business, trade, or commerce or in the furnishing of a service in the State of New York in violation of N.Y. Gen. Bus. Law §349, et seq.

179. Defendants' conduct as alleged herein was directed at consumers such as Plaintiffs, and members of the Subclass, was consumer-oriented misconduct that was misleading in a material respect to a reasonable consumer acting reasonably under the circumstances and had a broad impact on consumers at large.

180. As a direct and proximate result of Defendants' conduct as alleged herein, consumers such as Plaintiffs and members of the Subclass suffered actual damages in excess of $50 and including economic and financial losses. In particular, as a result of

Defendants' deceptive acts, Plaintiffs and the New York Subclass members have purchased Class Vehicles which have an undisclosed Defect which causes Class Vehicles to experience a short at the MGR due to premature corrosion in the hybrid cable case that sends power to the electrically driven rear wheels which results in the vehicle being undriveable and requiring expensive repairs and replacement of the cables.  Had Defendants disclosed the Defect in the Class Vehicles, Plaintiff and the Subclass members would have behaved differently, by either paying less for the Class Vehicles or by not purchasing or leasing a Class Vehicle from Toyota at all. Defendants' deceptive acts and practices as alleged herein were willful and knowing.

181. Plaintiff and members of the Subclass are entitled to injunctive relief and should be awarded actual damages which should be trebled within the discretion of the Court.

182. Pursuant to N.Y. Gen. Bus. Law §349(h), the New York Plaintiff and their counsel will seek reasonable attorneys' fees, to be awarded within the discretion of the Court.

### NINTH COUNT-DECEPTIVE ACTS AND PRACTICES

#### (Violations of New York General Business Law §349)
((By Chatwin Individually and on Behalf of the New York Subclass)

183. Plaintiff Chatwin on behalf of himself and all others similarly situated alleges and incorporates the above allegations by reference as if fully set forth herein.

184. With regards to New York consumers, Defendants' acts, practices and advertisement are of a recurring nature and were directed at consumers.

185. With regards to New York consumers, Defendants' acts, practices and advertisements are materially deceptive and misleading.

186. With regards to New York consumers, Plaintiff and the Subclass were injured as a result of Defendants' deceptive acts, practices and advertisements. As such, Plaintiff and the Subclass are entitled to be awarded actual damages which should be trebled within the discretion of the Court, as well as, reasonable attorneys' fees, to be awarded within the discretion of the Court.

## TENTH COUNT-FALSE ADVERTISING

### Violations Of New York's General Business Law §350

(By Chatwin individually and on behalf of the New York Subclass)

187. Plaintiff Chatwin individually and on behalf of and all others similarly situated alleges and incorporates the above allegations by reference as if fully set forth herein.

188. With regards to New York consumers, Defendants' advertisements were false and misleading in a material respect.

189. With regards to New York consumers, Plaintiff and the Subclass, have been aggrieved by Defendants' false advertising, as such, Plaintiff and the Subclass are entitled to be awarded actual

damages which should be trebled within the discretion of the Court, as well as, reasonable attorneys' fees, to be awarded within the discretion of the Court.

**ELEVENTH COUNT – DTPA VIOLATION**

**Violation of the Texas Deceptive Trade Practices Action**

**(By Nguyen Individually and on behalf of the Texas Sub-Class)**

190. Plaintiff Nguyen individually and on behalf of all others similarly situated alleges and incorporates the above allegations by reference as if fully set forth herein.

191. Plaintiff Nguyen asserts this claim individually and on behalf of the Texas sub-class.

192. Plaintiff Nguyen is a consumer as defined in the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Comm. Code § 17.41, et seq.

193. Toyota can be sued under the DTPA, because the DTPA allows a plaintiff to bring a cause of action against any person who uses or employs false, misleading, or deceptive acts or practices. *See* Tex. Bus. & Com. Code §17.50(a)(1). Corporations are defined to be included as persons. *See* Tex. Bus. & Com. Code §17.45(3). Toyota conducts trade and commerce in Texas.

194. The wrongful conduct of Toyota, as described herein, constitutes one or more violations of the Texas DTPA, and constitute acts detailed in Tex. Bus. & Com. Code§ 17.46, including, including but not limited to the following:

a. False, misleading, unfair and/or deceptive acts or practices in the conduct of any trade or commence ,including, but not limited to, representing that its 2021-2023 Siennas were of superior quality and had characteristics or benefits which they do not have; specifically that they would save on gas due to the hybrid engine and function as AWD vehicles, and had characteristics and/or benefits that it did not have; representing that these models were of a particular standard or quality that it was not; and/or failing to disclose known information about the 2021-2023 Siennas including manufacturing and design defects related to the hybrid cable and MGR connector, in order to induce consumers, such as Plaintiff, into a transaction that the consumers would not have entered into had the information been disclosed;

b. Breach of an express and/or implied warranty; and

c. Unconscionable acts or practices involving the design, manufacture, testing, marketing, promotion, distribution, and sale of Class Vehicles.

195. Plaintiff Nguyen and other members of the Texas sub-class relied on Toyota's false, misleading and/or deceptive acts and practices to their detriment.

196. Toyota acted unconscionably in failing to provide the proper course of action to remedy the defective 2021-2023 Siennas. *See* Tex. Bus. & Com. Code §17.50(a)(3). More specifically, Toyotas conduct was to Plaintiff Nguyen and Texas Class Members' detriment. Toyota took of advantage of the lack of knowledge, ability and experience of Plaintiff and the class members to a grossly unfair degree by misrepresenting and deceiving customers into believing

that they were purchasing or leasing Class Vehicles that would safely function as AWD hybrids without experiencing a safety Defect that resulted in the shutdown of the vehicle and required the costly out of pocket replacement of the hybrid cable and MGR connector within just a few years of purchase which would not be covered by the warranty. This Defect has a great impact on the use and safety of the Class Vehicles.

197. Defendants were aware of this Defect prior to the first sale of these Fourth Generation Siennas. Thus, Defendants knew at the time they made their representations and omission that they were false. Despite this knowledge, Defendants took advantage of Plaintiff Nguyen and the Texas Class by aggressively marketing the Class Vehicles and inducing Plaintiff Nguyen and the Texas class to purchase them.

198. As a result there was a gross disparity between the value received and the consideration paid for the Class Vehicles which were defective, and not of merchantable quality or fit for their ordinary purpose in relation to the consideration paid. Plaintiffs and the Texas class members relied on Defendants' conduct to their detriment given that Toyota knew of this Defect at the time of sale while Plaintiffs and the Class were relying upon Defendants' skill or judgment to furnish Vehicles of merchantable quality.

199. In doing the acts alleged above, Defendants breached implied warranties in violation of Texas Business and Commerce Code §17.50(a)(2).

200. Defendants' acts and/or omissions in violation of the Texas DTPA were a producing cause of Plaintiff Nguyens's and the Texas Class' injuries, including but not limited to economic damages and risk of physical injury to Plaintiff and his family as well as to the Texas Class.

201. Defendants' wrongful conduct was committed knowingly and intentionally as set forth in Section 17.45(9) and 17.45(13) of the Act making Toyota liable for treble damages under the Texas DTPA. Plaintiff and the class also seeks restitution of the money the Defendants acquired in violation of the DTPA, threefold the and economic damages sustained, and order enjoining Defendants from further employing the practices described herein and order Toyota to recall the defective Class Vehicles, plus reasonable and necessary attorneys' fees, and costs of court, in accordance with Tex. Bus. & Com. Code §17.50.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs on behalf of themselves and on behalf of the Nationwide Class, New Jersey Subclass, New York Subclass, and Texas Subclass prays for judgment against Defendants, Toyota

Motor Sales, U.S.A., Inc., Toyota Motor North America, Inc. , and Toyota Motor Corporation as follows:

1.    An Order pursuant to Fed. R. Civ. P. 23 (c) granting Certification of the proposed Nationwide Class, New Jersey Subclass, New York Subclass, and Texas Subclass, and appointing and designating the law firm, Nagel Rice, LLP to represent the Classes as class counsel pursuant to Fed. R. Civ. P. 23(g);

2.    All recoverable compensatory, statutory and other damages sustained by Plaintiffs and the other members of the Nationwide Class, New Jersey Subclass, New York Subclass, and Texas Subclass.

3.    Restitution and disgorgement of all amounts obtained by Toyota Motor Sales, U.S.A., Inc., Toyota Motor North America, Inc., and Toyota Motor Corporation as a result of its misconduct, together with interest thereon, from the date of payment, to the victims of such violations;

4. Restitution of incidental expenses incurred by proposed Class Representatives and Class Members including the cost of rental vehicles or substitute transportation;

5.    Actual, treble, and/or statutory damages for injuries suffered by Plaintiffs and the other members of the Classes and Subclasses in the maximum amount permitted by applicable law;

6.    An Order, among other things: (a) requiring Toyota to immediately cease its wrongful conduct, as set forth above; (b)

enjoining Toyota from further wrongful practices concerning the distribution, advertisement, marketing, warranting, sale and lease of the Class Vehicles; (c) requiring Toyota to make all repairs and/or replacements necessitated as a result of the Defect in the vehicles purchased or leased by Plaintiffs and the other members of the Nationwide Class, New Jersey Subclass, New York Subclass, and Texas Subclass; (d) requiring Toyota to refund to Plaintiffs and all members of the Nationwide Class, New Jersey Subclass, New York Subclass, and Texas Subclass, the funds they were forced to expend on repairs and/or replacements as a result of the Defect; (e) holding Toyota liable to all members of the Nationwide Class, New Jersey Subclass, New York Subclass, and Texas Subclass for the diminution in value to the Class Vehicles which have not yet experienced the Defect, and (f) a declaration that Toyota is financially responsible for notifying all members of the Nationwide Class, New Jersey Subclass, New York Subclass, and Texas Subclass of the Defect, recalling the Class Vehicles and/or extending their warranties to cover the Defect;

7.   Statutory pre-judgment and post-judgment interest on the Class damages;

8.   Injunctive and declaratory relief pursuant to Fed. R. Civ. P. 23(b)(2) declaring that going forward, the hybrid cable corrosion defect and all remedial or replacement necessary to

correct the Defect is covered for the expected useful life of the Class Vehicles;

9.    Payment of reasonable attorneys' fees and costs as may be allowable under applicable law, and

10.    Such other relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all causes of action so triable.


DATED: June 22, 2023                 NAGEL RICE, LLP
                                     *Attorneys for Plaintiffs and*
                                     *the Putative Class*

                                     By: s/ *Bruce H. Nagel*
                                         Bruce H. Nagel
                                         Randee M. Matloff
                                         103 Eisenhower Parkway
                                         Roseland, New Jersey 07068
                                         973-618-0400
                                         bnagel@nagelrice.com
                                         rmatloff@nagelrice.com

                                         Joseph Santoli, Esq.
                                         340 Devon Court
                                         Ridgewood, New Jersey 07450
                                         201-926-9200
                                         josephsantoli002@gmail.com